(No. 41473.—

MARION POWER SHOVEL COMPANY, INC., Appellant, *vs.*
THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed January 29, 1969.*

CYRUS MEAD III, of Chicago, and ELIZABETH G.
FRAZEE, of Springfield, (HAMILTON K. BEEBE and BROWN,
HAY & STEPHENS, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield,
(JOHN J. O'TOOLE and JOHN J. GEORGE, Assistant At-
torneys General, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the
court:

The question presented here is whether the purchase
and use in Illinois of a certain machine built to special order
is taxable under the Illinois Use Tax Act (Ill. Rev. Stat.
1965, ch. 120, par. 439.1 *et seq.*) or the Illinois Service
Use Tax Act (Ill. Rev. Stat. 1965, ch. 120, par. 439.31
*et seq.*).

Plaintiff, Marion Power Shovel Company, contracted

with Truax-Traer Coal Company to design, manufacture and sell a stripping shovel for use at the latter's Sparta, Illinois, mine. Following delivery of the shovel, the Department of Revenue assessed a use tax, treating the transaction as a retail sale of tangible personal property. Plaintiff paid the tax assessed but filed a claim for credit of roughly $84,000, alleging that the transaction was properly taxable under the Service Use Tax Act as a sale of a service. The refund requested represented the difference between tax liability measured by the Use Tax Act (the base of the tax being the selling price) and the Service Use Tax Act (the tax base being the cost of the tangible personal property transferred). Following denial of its claim, plaintiff brought an action under the Administrative Review Act in the circuit court of Sangamon County to review the Department's decision. Judgment was entered affirming the decision and appeal is taken directly to this court, State revenue being involved.

Undisputed factual background shows that plaintiff is primarily engaged in the manufacture, application and sale of power shovels and drag lines of various sizes for both general and specific uses. In the manufacture of small and intermediate shovels and drag lines, it uses standard jigs and manufactures some on special order and some for stock. However, in the manufacture of large shovels and drag lines, it does not manufacture any for stock purposes but only upon special order and after rather detailed application studies are made. In 1963, such a study was made for the Truax-Traer Company to determine what type of stripping equipment was necessary to continue stripping operation at its Fiatt, Illinois, mine. As a result of this study, plaintiff recommended an electric power shovel, ultimately designated model 5860, having a 160-foot boom with an 80-cubic-yard bucket. Truax-Traer placed an order for this machine.

While the above shovel was being built, Truax-Traer

requested another study be made of its mining operations at Sparta, Illinois. This study resulted in the order of the shovel involved here, which was built on the same general specifications of the Fiatt shovel (it was also designated model 5860) but contained many variations with respect to weight, cost, boom length, bucket design and capacity and power ranges. It was constructed in sections and shipped to the erection site by railroad cars. It took one year to manufacture and, when assembled, had an overall height of 166 feet and an operating weight of 10,000,000 lbs. The assembly was done by an independent contractor and the cost thereof was not included in the contract price nor in the tax basis used by the Department in assessing the Use tax.

Plaintiff contends that, under Rule 3 of the Rules and Regulations of the Department and our decisions in *Ingersoll Milling Machine Co.* v. *Department of Revenue,* 405 Ill. 367, and *Bucyrus-Erie Co.* v. *Lorenz,* 26 Ill.2d ·183, the instant transaction was a sale of service rather than of tangible personal property and is therefore not subject to use tax. Rule 3 reads in relevant part as follows:

"SELLERS OF MACHINERY, TOOLS AND THE LIKE.

"1. When Liable for Retailers' Occupation Tax.

Sellers of machinery, tools, dies, jigs, patterns, gauges and the like to users or consumers incur retailers' occupation tax liability except as specified in paragraph 2 hereof. This is true whether the seller installs such tangible personal property for the purchaser or not. * * *

The fact that it is not a stock item and is only produced after order is received, or is an alteration of a standard item, is not sufficient to exempt it from retailers' occupation tax unless it meets all the exemption tests of paragraph 2 below.

* * * even if an item qualifies for retailers' occu-

pation tax exemption under paragraph 2 of this rule, subsequent sales by the seller of the same item without material change to the purchaser for use (so-called repeat orders) are subject to the retailers' occupation tax because the skill that is involved after the first item is made is production skill and not specialized engineering and design skill. * * *

"2. When Not Liable for Retailers' Occupation Tax.

The seller of a special machine, tool, die, jig, pattern, gauge or other similar item is engaged primarily in a service occupation, rather than in the business of selling tangible personal property, and so does not incur retailers' occupation tax liability with respect to the sale, if the following tests for exemption are all met in the transaction:

(a) The purchaser employs the seller primarily for his engineering or other scientific skill to design and produce the property on special order for the purchaser and to meet the particular needs of the purchaser;

(b) the property has use or value only for the specific purpose for which it is produced, and

(c) the property has use or value only to the purchaser."

To overcome the statutory *prima facie* case of taxability embodied in the Department's corrected return, plaintiff introduced testimony and exhibits to show that the transfer of the tangible personal property composing the completed shovel was incidental to the rendering of scientific and engineering services. Jack F. Weis, plaintiff's vice-president, testified that the shovel was "tailored" to the particular over-burden conditions of the Sparta mine and that it could only be operated efficiently elsewhere if the over-burden characteristics differed within a 20% range. He stated there were material differences between the Fiatt and Sparta

shovels although 70% of the design drawings were the same. It was his opinion that the Sparta shovel could be broken down and transported to another mine for operation but that it would be economically impractical to do so. Truax-Traer's vice-president, Harry M. Tibbs, testified to the variances between the Sparta and Fiatt shovels, indicating that only two were specifically attributable to the different over-burden characteristics, the others being refinements or corrections in the Fiatt shovel. He stated that it was possible that the Sparta shovel could be efficiently used at the Fiatt mine or at other southern Illinois mine sites although he doubted it would be economically feasible.

The hearing officer for the Department found that, with the exception of the dipper bucket, either of the two shovels could be used at either mine or at other mines so long as the over-burden depth was within 20 feet of the depth at Sparta or Fiatt. He concluded that the design of the dipper bucket and steering crawlers on the Sparta shovel were prompted by the over-burden characteristics of that mine, with the other design changes being refinements of the Fiatt shovel designs. He further found that the major parts of both machines, such as dipper, boom, hoist motors, *etc.*, could be interchanged. Because he concluded that the Sparta shovel was, in substance, a modified version of the Fiatt machine, and would have value, other than salvage, to other purchasers, the claim for credit was denied, notwithstanding the indisputable engineering services involved in adapting the shovel.

It is axiomatic that the findings of an administrative agency on questions of fact are *prima facie* correct and are not to be disturbed upon review unless manifestly against the weight of the evidence. (*Kellogg Switchboard and Supply Corp.* v. *Department of Revenue*, 14 Ill.2d 434.) Since in the present case the hearing officer's explicit findings, that the shovel was essentially an adaption of an existing model and had value to other purchasers, are not against the mani-

fest weight of the evidence, we hold that the transaction was a sale of tangible personal property at retail.

In making this determination, we are aware that the *Bucyrus-Erie* case, cited by plaintiff, reaches a different result although its facts are similar to those here. That case involved the manufacture and sale of an excavating wheel for use in a particular strip mining operation. The evidence established that the excavator was of unique design, specially suited to many peculiarities of the mine involved, and could not be considered a mere adaption of a standard design. In addition, the court concluded that the excavator "except for salvage, had no commercial value once it had served its purpose." (26 Ill.2d at 189.) These factors make it distinguishable from the case at bar.

We hold the sale of the shovel measured a use tax; therefore, the judgment of the circuit court upholding the Department's denial of plaintiff's claim for credit is affirmed.