BILLIE  G.  HARGETT,  Plaintiff-Appellee,  *v.*  THE  CIVIL  SERVICE COMMISSION *et al.*, Defendants-Appellants.

Fourth District   No. 13994

Opinion filed June 27, 1977.

John W. Russell, of Carlinville, for appellants.

Thomas W. Duda, of Cornfield & Feldman, of Chicago, for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

This case comes on appeal from a circuit court decision reversing a decision of the Illinois Civil Service Commission (hereinafter Commission). The issue on appeal is whether the decision of the Commission was against the manifest weight of the evidence.

Billie Hargett was employed as a lieutenant at Menard Penitentiary. On January 24, 1975, Hargett was discharged. Five charges were made against him and a hearing was held. The hearing officer made extensive findings and found Hargett guilty only of charge 4; he recommended a 10-day suspension. On August 20, 1975, the Commission entered an order adopting the findings of the hearing officer. The Commission held that all five charges had been proved and affirmed the discharge. Hargett filed a complaint for administrative review in Sangamon County Circuit Court on September 19, 1975. The trial court reversed the Commission as to charges 1, 2, 3, and 5 as against the manifest weight of the evidence. The court found sufficient evidence to sustain charge 4, but held that the action of the Commission was arbitrary and reversed on charge 4 as well.

■■ In reviewing actions of administrative agencies, a reviewing court may not reweigh the evidence or make an independent determination of fact. The findings of the agency may be set aside only if they are against the manifest weight of the evidence. *Harrison v. Civil Service Com.* (1953), 1 Ill. 2d 137, 115 N.E.2d 521; *Colaw v. University Civil Service Merit Board* (1975), 37 Ill. App. 3d 857, 341 N.E.2d 719.

Charge 1 accused Hargett of making racially derogatory remarks to or in front of black residents at Menard. Sergeant Marlen Happell testified that he heard Hargett direct a racial epithet toward an inmate named Claygett. Hargett denied that he made the remark. Further evidence seriously impeached Happell's testimony and revealed that Happell disliked Hargett.

Charge 1 also included evidence that on one occasion Hargett allegedly uttered a racial slur concerning an inmate who was maced. No evidence was presented at the hearing that Hargett made the statement. We find the decision of the Commission was against the manifest weight of the evidence as to charge 1.

Charge 3 accused Hargett of discriminatory activities in that he allowed white, but not black, inmates to wear contraband clothing; that he wrote a disproportionate amount of disciplinary tickets on black inmates; and that he harassed certain black inmates by writing a disproportionate number of disciplinary tickets on them.

All testimony relating to charge 3 indicated that Hargett strictly enforced the clothing regulations on all inmates, regardless of their race. No evidence on the number of tickets written by Hargett on either black or white inmates was presented.

The evidence relating to harassment involves two inmates named Reed and Patterson. On occasion, Patterson would obtain a pass to go from the cellhouse to see a counselor. The evidence indicates that Hargett simply followed Patterson, who was en route to the counselor's office. Clearly it is a guard's basic duty to watch inmates. Nothing in the record points to any harassment of Patterson.

There is a rule at Menard that requires all inmates to attend all meals except on weekends and holidays. Sergeant Happell had been instructed by Hargett to comply with this rule, but Happell permitted inmate Reed to miss breakfast so Reed could help Happell clean up the cellhouse. When Hargett found Reed away from breakfast call, he began to issue a disciplinary ticket on him, but did not do so when he found out that Happell was responsible for the incident. This certainly does not constitute harassment. All Hargett was doing was enforcing the prison rules. The Commission's decision on count 3 was against the manifest weight of the evidence.

Charge 5 accused Hargett of membership in a "white extremist organization." There is no evidence whatsoever in the record to sustain charge 5, and defendants' brief does not argue the matter. The Commission's finding on count 5 was against the manifest weight of the evidence.

Charge 2 alleged that, in December of 1973, Hargett carried a knife inside Menard in violation of Regulation 400. Regulation 400 was amended on May 15, 1974, to include the following:

> "No weapon of any kind shall be carried by officers in the normal operation of the institution * * *."

Prior to May of 1974, the weapons' statement was not part of Regulation 400.

There is no question that Hargett did carry a pocketknife until late 1974. Much of the testimony centered on whether a knife was a weapon for purposes of Regulation 400. Several witnesses testified that the carrying of pocketknives is a widespread practice among the employees at Menard. In December of 1974, the Department of Corrections promulgated a policy against employees possessing knives in the institution. The policy was enforced by random searches or "shake-downs" of employees. At these shakedowns, some knives were found, but no disciplinary action was ever taken.

Warden Israel added confusion to the situation by permitting some employees to carry small 3-inch souvenir knives without notifying all employees in writing that anything longer than 3 inches would be considered a weapon. Hargett's knife was longer than 3 inches, and he was seen several times with it in the penitentiary. Hargett admitted that he carried a knife in December of 1974, after the new policy was

instituted, but he stated that he had been given permission by a previous warden in 1961 to carry it. Hargett testified that Israel knew he carried a knife, but said nothing of it. Israel denied that he knew Hargett carried a knife.

It is clear that the new policy rescinded the common practice of carrying knives. We find that the decision of the Commission was not against the manifest weight of the evidence.

■■ Charge 4 involves the possession and sale of blackjacks in Menard. A blackjack is clearly a weapon, and possession of it is a violation of Regulation 400. Several witnesses saw Hargett with a blackjack inside the prison. Two employees testified that Hargett had attempted to sell a blackjack to them, but they refused to buy it. One witness testified that Hargett sold him a blackjack.

Hargett is a peace officer of Thompsonville. He asserted an exemption for his conduct under section 24—2(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—2(d)). Without commenting on whether this exemption applies to the Regulation 400, we note that section 24—2(d)(2) grants an exemption to a peace officer who purchases, possesses, or carries a blackjack, but it does not offer an exemption for the *sale* of a blackjack.

Hargett alleged, and the trial court found, that the enforcement of Regulation 400 against him was arbitrary. Administrative action taken under statutory authority will not be set aside unless it is clearly arbitrary, unreasonable, or capricious. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782.) Hargett points out that other employees also carried blackjacks and no disciplinary action was taken against them. Blackjacks were not common among employees, although a few witnesses admitted carrying them. The evidence does not show that the administrative action taken against Hargett was clearly arbitrary. As with traffic offenses, if only 1 in 10 speeding cars is stopped and ticketed, it is no defense that the other 9 got away. The Commission's decision on charge 4 was not against the manifest weight of the evidence. The trial court is reversed as to charge 4.

In light of our holding, we remand this case to the Commission for consideration of proper disciplinary measures and possible back wages. (*Res v. Civil Service Com.* (1977), 49 Ill. App. 3d 852, 365 N.E.2d 209.) The trial court is affirmed on charges 1, 3, and 5. We reverse as to charges 2 and 4.

Affirmed in part; reversed in part; remanded with directions.

GREEN, P. J., and REARDON, J., concur.