DAVID BRUNS, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellee.

Fourth District   No. 14642

Opinion filed May 12, 1978.—Rehearing denied June 7, 1978.

Hutton, Laury, Hesser & Lietz, of Danville (Everett L. Laury, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

The plaintiff, David Bruns, appeals from an order of the Circuit Court of Champaign County affirming the revocation of his medical license by the Illinois Department of Registration and Education (hereinafter referred to as Department) for a violation of section 16(4) of the Medical Practice Act (Ill. Rev. Stat. 1976 Supp., ch. 91, par. 16a(4)).

The Department's Medical Disciplinary Board (hereinafter referred to as Board) in its findings of fact determined that on June 6, 1975, Ronald Miller went to the office of plaintiff complaining of severe pain in the lower right quadrant of his abdomen. Plaintiff's 11-year-old son obtained Miller's weight, height, blood pressure, and a urine sample. No blood test was performed. After completing an examination, plaintiff diagnosed Miller as having a spigelian hernia. Plaintiff then performed a surgical operation on Miller under local anesthetic in the same room in which

plaintiff had examined Miller. During the operation, plaintiff wore surgical gloves but did not wear a surgical mask. Plaintiff attended patients in other rooms in his office on at least two occasions during the course of the operation and permitted his son to observe the procedure from time to time. At one point during the procedure, plaintiff smoked a cigar. After surgery was completed, plaintiff permitted Miller to drive home. That evening Miller became increasingly ill and, on the following day, June 7, 1975, Miller returned to plaintiff's office. At that time plaintiff diagnosed Miller's illness as prostatitis and urinary tract infection. The next day, June 8, 1975, the plaintiff visited Miller in his home and did not change the diagnosis. Miller's condition worsened. On June 9, 1975, he was admitted to a hospital where he later underwent a major surgical procedure which disclosed a ruptured appendix and peritonitis.

In November 1976, hearings were conducted by the Board for the purpose of determining whether plaintiff's license should be suspended or revoked. Present and conducting the hearings were a hearing officer and one member of the Board. Dr. James Keasling testified and gave his professional opinion as an expert that the surgery performed by the plaintiff was done under "primitive operative conditions," that plaintiff failed to diagnose Miller promptly, and that plaintiff rendered post-operative treatment totally unrelated to the plaintiff's diagnosis. On February 16, 1977, after reviewing the hearing transcript, six members of the seven member Board filed their findings of fact and conclusions of law, recommending to the director of the Department that plaintiff's medical license be revoked. The Board determined that the plaintiff had violated section 16(4) of the Act by "Engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public; * * *." The acting director of the Department ordered that the plaintiff's license be revoked and on July 25, 1977, upon review, the Circuit Court of Champaign County affirmed the decision of the Department.

On appeal, plaintiff contends (1) that a quorum of the Board is required to be present at an evidentiary hearing regarding the revocation of a medical license; (2) that the Department's decision to revoke plaintiff's license to practice medicine is against the manifest weight of the evidence; and (3) that his actions did not amount to unprofessional conduct likely to deceive, defraud, or harm the public in violation of section 16(4) of the Act.

Section 16.02 of the Act provides for the creation of the seven member Board. After providing in this section for the appointment of Board members, their terms of office, and the selection of chairmen and other officers, section 16.02(d) states in part: "Four members of the Board shall constitute a quorum. A vacancy in the membership of the Board shall not

impair the right of a quorum to exercise all the rights and perform all the duties of the Board." (Ill. Rev. Stat. 1976 Supp., ch. 91, par. 16a—2(d).) The Act further provides in section 17.02 that "At the time and place fixed in the notice, the Board provided for in this Act shall proceed to hear the charges and both the accused person and the complainant shall be accorded ample opportunity to present in person, or by counsel, such statements, testimony, evidence and argument as may be pertinent to the charges or to any defense thereto. The Board may continue such hearing from time to time. If the Board is not sitting at the time and place fixed in the notice or at the time and place to which the hearing has been continued, the Department shall continue such hearing for a period not to exceed 30 days." (Ill. Rev. Stat. 1976 Supp., ch. 91, par. 16b.02.) Plaintiff contends that the language of these two paragraphs implies that a quorum of four members of the seven member Board is necessary to exercise all the rights and perform all the duties of the Board and, therefore, at least a quorum must be present at a disciplinary hearing. Since only one member of the Board was present at his disciplinary hearing, plaintiff claims the Board was improperly constituted and his license wrongfully revoked. We do not agree.

■■ It is well established that members of a board charged with ultimate decision-making authority need not personally hear the evidence in order for their determination to be valid. (*Morgan v. United States* (1936), 298 U.S. 468, 80 L. Ed. 1288, 56 S. Ct. 906; *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785.) In *Homefinders,* the court reversed the decision of a city housing board because only four of its seven members conducted hearings and issued a report which made findings and imposed fines. There, the ordinance expressly required that five or more members of the board be present at hearings and participate in the final decision. The court, however, expressed approval for the proposition that in the absence of express statutory provisions to the contrary, members making the final decision need not be present when the evidence is taken as long as they review the record of proceedings. The court stated: "*Morgan* and other Federal decisions have consistently recognized that, in the absence of statutory provisions to the contrary, it is not necessary that testimony in administrative proceedings be taken before the same officers who have the ultimate decision-making authority. [Citations.] They indicate to the contrary that administrative proceedings may be conducted by hearing officers who refer the case for final determination to a board which has not 'heard' the evidence in person. The requirements of due process are met if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its determination thereon. [Citations.]" 65 Ill. 2d 115, 128, 357 N.E.2d 785, 791.

■■ ■ In the instant case, the Act contains no directive regarding the number of Board members who must be present at the hearings. In the absence of such a mandate, it was sufficient that one member listened to the testimony along with the hearing officer. Plaintiff was afforded procedural due process where six members· of the Board subsequently reviewed the transcript before making its findings and recommendations. Accordingly, we find that a quorum of the Board is not required to be present at an evidentiary hearing held pursuant to the Act.

■■ ■ Plaintiff next argues that the Department's decision revoking his license to practice medicine is not supported by the evidence. Section 11 of our Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274) provides that the findings and conclusions of an administrative agency on questions of fact shall be held to be *prima facie* true and correct. An appellate court may not set aside findings of fact by an administrative agency unless they are against the manifest weight of the evidence. (*Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 244 N.E.2d 598; *Rutledge v. Department of Registration & Education* (1966), 77 Ill. App. 2d 103, 222 N.E.2d 195; *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230.) In the present case, there is ample evidence that plaintiff operated on this patient without adequate safeguards, failed to take essential tests before the operation, had no medical assistant present, had no emergency equipment available, and rendered inadequate post-operative treatment. In view of such evidence, it is clear that the Board's findings and the Department's decision are supported by the record and are not against the manifest weight of the evidence.

■■ Finally, plaintiff contends that the evidence failed to support the Board's finding that his conduct amounted to a violation of section 16(4) of the Act as unprofessional conduct likely to deceive, defraud, or harm the public. It is clear that where a broad statutory standard has been delegated to an agency's discretion, a court should rely on the agency's interpretation as controlling whenever there is reasonable debate as to its meaning. (*Randquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198; *Legg v. Illinois Fair Employment Practices Com.* (1975), 28 Ill. App. 3d 932, 329 N.E.2d 486.) We defer to the Board's determination that plaintiff's conduct violated section 16(4).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GREEN, P. J., and CRAVEN, J., concur.