RONALD T. HOFMEISTER, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *ex rel.* JOHN GALVIN, Chief Counsel, Defendant-Appellee.

Fourth District   No. 14764

Opinion filed August 4, 1978.

Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, of Springfield, for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

The plaintiff, Ronald T. Hofmeister, appeals an October 20, 1977, order of the Circuit Court of Sangamon County affirming the suspension of his license to practice pharmacy for six months by the defendant, Department of Registration and Education (hereinafter referred to as Department), for a violation of section 7.6 of the Pharmacy Practice Act (Ill. Rev. Stat. 1973, ch. 91, par. 55.7—6).

The record discloses that on February 14, 1974, a complaint was filed by the Department alleging that the plaintiff had engaged in the practice of pharmacy with Timothy C. Orr at the Medicine Shoppe, Peoria, Illinois, knowing that Orr was not licensed to practice pharmacy in Illinois. Paragraph 4 of the amended complaint alleged:

"4. That the Respondent is guilty of 'Gross Immorality' as defined in Rule V(2a) of the Rules and Regulations for the Administration of the Pharmacy Practice Act in that he was in willful professional association or connection with a place defined as a drug store in the Illinois Pharmacy Practice Act, wherein the practice of Pharmacy was engaged in by a person who was not authorized to do so under the provisions of Section 55.5 Chapter 91, the Illinois Pharmacy Practice Act."

A hearing was conducted by the Board of Pharmacy (hereinafter referred to as Board) of the Department on March 4, 1974. At the hearing, Orr testified that he was actively engaged in the practice of pharmacy without Illinois certification at the Peoria store on or about September 11, 1972. Orr stated that he was at that time a registered pharmacist in the State of Iowa, but was not licensed to practice pharmacy in Illinois until December 19, 1972. According to Orr, plaintiff was the registered pharmacist in charge of the Medicine Shoppe on September 11, 1972. Orr further testified that he had four separate conversations with the plaintiff in the presence of others, before and after September 11, 1972, concerning the fact that he was unlicensed in Illinois; also that plaintiff had informed him the Medicine Shoppe would process his reciprocity papers and that he could practice pharmacy without a license during such processing. Orr also stated that from September 11, 1972, through September 14, 1972, he had filled numerous prescriptions under the supervision of the plaintiff. According to Orr, plaintiff had hung his own license in the store on September 11, 1972, and had not removed it until January of 1973.

Plaintiff testified that he was a pharmacist licensed to practice in Illinois and had been employed by Medicine Shoppe International since August 1, 1972. Plaintiff stated that he did not interview nor did he have any part

in the decision by his employer to hire Orr, but was sent by the company to Peoria in September 1972 to train Orr to run that store. Plaintiff denied having any conversations with Orr regarding reciprocity. Plaintiff also stated that he could not recall any conversations with Orr as to whether Orr was licensed in Illinois, and that he had no specific knowledge during August or September of 1972 that Orr was unlicensed. Plaintiff further testified that he hung his certificate in the store on September 11, 1972, and that he could not recall whether he had removed the license when he left the store or whether he had the license in his possession for the remainder of 1972. Plaintiff testified that he had never asked Orr for his certificate although he was aware of the rule that a pharmacist must display his certificate of registration.

At the conclusion of the hearing, the Board found the plaintiff guilty as charged and recommended to the Director of the Department that his license be suspended for six months. The Director rereferred the matter to the Board on April 26, 1974. At a second hearing on July 8, 1974, Michael Busch, chairman of the board of directors of Medicine Shoppe, Incorporated, testified that the plaintiff was employed by Medicine Shoppe International, an entity separate from Medicine Shoppe, Incorporated, but having many of the same shareholders. Busch testified that plaintiff was assigned the responsibility of supervising Orr at the Peoria store because the person otherwise in charge of such training and supervision was unavailable. Busch took ultimate responsibility for the incident and further testified that it was not within plaintiff's normal duties to train such personnel, but he was asked to do so because of an expedient situation. Plaintiff again testified that he had not asked Orr if he was licensed; that he did not discuss reciprocity with Orr; that he had not removed his certificate upon leaving the store; and that he assumed Orr was registered or he wouldn't have been hired.

The Board again recommended that plaintiff's license be suspended for six months. Following oral argument on October 10, 1974, the Director of the Department denied plaintiff's motion for rehearing and on November 19, 1974, the Director ordered that plaintiff's license be suspended for six months. On November 13, 1974, the plaintiff filed a petition for administrative review and, on October 20, 1977, the Circuit Court of Sangamon County affirmed the decision of the Department, finding that the decision was not contrary to the manifest weight of the evidence. The court also ordered that its decision be stayed pending this appeal.

The plaintiff contends on appeal that the Department's decision to suspend his license to practice pharmacy is contrary to the manifest weight of the evidence.

■■ Section 7.6 of the Act provides that the Department may suspend the license to practice pharmacy of any person found to be guilty of gross

immorality. Section 7.9 of the Act authorizes the Department to formulate any rules and regulations necessary to carry out the purposes of the Act. Although the rules and regulations of the defendant Department were not made part of the record on appeal, we may properly take judicial notice of them. (*Sye v. Wood Dale Fire Protection District No. 1* (1976), 43 Ill. App. 3d 48, 50, 356 N.E.2d 938.) Rule V(1), Department of Registration and Education, Rules and Regulations Promulgated for the Administration of the Illinois Pharmacy Act, at 4 (1970), defines gross immorality under section 7.6 of the Act as "* * * any act or practice hostile to the public health, safety and welfare that is wilfully committed or engaged in by the holder of a license or certificate of registration * * *." Rule V(2a) states that a license holder shall be considered *prima facie* guilty of gross immorality within the meaning of section 7.6 of the Act for "Willful professional association or connection with any place defined as a drug store or pharmacy in the Illinois Pharmacy Practice Act, wherein the practice of Pharmacy is engaged in by any person who is not authorized to do so under the provisions of said law. (Sec. 5)."

In *Gordon v. Department of Registration & Education* (1970), 130 Ill. App. 2d 435, 264 N.E.2d 792, the plaintiff argued that a Federal misdemeanor conviction did not constitute gross immorality within the meaning of section 7.6 of the Act so as to warrant the suspension of his license. In rejecting plaintiff's contention, the court stated: "In the absence of a statutory definition, 'gross immorality' may be measured by the standards of the profession concerned. [Citation.]" (130 Ill. App. 2d 435, 439, 264 N.E.2d 792.) In *Bruns v. Department of Registration & Education* (4th Dist. 1978), 59 Ill. App. 3d 872, 376 N.E.2d 82, this court deferred to the Department's decision that the plaintiff's conduct violated section 16(4) of the Medical Practice Act (Ill. Rev. Stat. 1976 Supp., ch. 91, par. 16a(4)). In doing so, this court stated: "It is clear that where a broad statutory standard has been delegated to an agency's discretion, a court should rely on the agency's interpretation as controlling whenever there is reasonable debate as to its meaning. [Citations.]" 59 Ill. App. 3d 872, 876, 376 N.E.2d 82, 85.

■■ In view of the above, we find that the Department acted within its discretionary authority in determining that plaintiff was guilty of gross immorality for practicing pharmacy at the Medicine Shoppe with Orr who was unlicensed at that time.

Plaintiff additionally argues that his conduct was not violative of Rule V(2a) as he did not have the authority to hire or fire Orr. The record does support plaintiff's argument that his role as training supervisor in the Peoria store was temporary in nature and not part of his normal duties with the company as Director of Real Estate Operations. However, in *Haas v. People* (1888), 27 Ill. App. 416, the court held that a registered

pharmacist who has been placed in charge of a drug store becomes personally liable for the statutory penalty if he permits an unlicensed person to dispense drugs within the store.

Finally, section 11 of our Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 274) provides that the findings and conclusions of an administrative agency on questions of fact shall be held to be *prima facie* true and correct. In reviewing actions of administrative agencies, a reviewing court may not reweigh the evidence or make an independent determination of fact. (*Hargett v. Civil Service Com.* (1977), 49 Ill. App. 3d 856, 857, 365 N.E.2d 213.) The mere fact that evidence is conflicting is not sufficient reason to warrant reversal by a reviewing court. (*Randquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) An appellate court may not set aside findings of fact by an administrative agency unless they are against the manifest weight of the evidence. *Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 17, 244 N.E.2d 598; *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 1036, 355 N.E.2d 230.

■■ In the instant case, we are convinced that there is sufficient evidence in the record to support the Department's determination that the plaintiff engaged in the practice of pharmacy with Orr at the Medicine Shoppe during September of 1972, knowing that Orr was unlicensed in Illinois. While we acknowledge that, according to the testimony, it was not within plaintiff's normal duties to train and supervise new personnel, the fact remains that plaintiff was the registered pharmacist in charge of the Medicine Shoppe during the short period of Orr's training. We find it unlikely that plaintiff never discussed nor asked Orr for his certificate during this time in view of plaintiff's repeated testimony that he was well aware of the requirement that a pharmacist must display his certificate of registration. According to Orr's testimony, he had four separate conversations with the plaintiff before and after September 11, 1972, regarding his lack of an Illinois license. Finally, the record indicates that plaintiff had displayed his own license in the store on September 11, 1972, but failed to remove it when he left the store and did not do so until after Orr received his Illinois license on December 19, 1972. Plaintiff's failure to remove his own license from display raises the inference that he did so to cover for Orr's lack of license during this period. We conclude that the Department's decision to suspend plaintiff's license to practice pharmacy for six months for gross immorality within the meaning of section 7.6 of the Act was not contrary to the manifest weight of the evidence. Accordingly, the order of the circuit court is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.