BERNARD A. HEEREY, Plaintiff-Appellant, *v.* ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 79-117

Opinion filed March 31, 1980.

Foss, Schuman & Drake, of Chicago (Barry H. Kahan, of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Robert Retke and Jetta N. Jones, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The principal issue raised in this appeal is whether the Chicago Zoning Ordinance (Munic. Code of Chicago, ch. 194A, as amended to and including January 1, 1977) (hereinafter zoning ordinance) allows the establishment of an open, nonaccessory parking lot for the storage of private passenger automobiles as a permitted use on property situated within a B7-6 General Central Business District, or requires that such a property use be subject to discretionary approval by the Chicago Zoning

Board of Appeals (hereinafter Board) as a variation in the nature of a special use requiring public notice and hearing. Plaintiff Bernard A. Heerey appeals from the order entered by the circuit court of Cook County on October 24, 1978, denying his motion for summary judgment and entering judgment in favor of the Board, and entering further judgment affirming the decision of the Board with respect to its interpretation of the application of the aforesaid provisions of the zoning ordinance to his property. An additional issue presented is whether the trial court invoked the appropriate standard of review in arriving at its conclusions affirming the decisions of the Board. For the reasons hereinafter stated, we affirm.

On August 9, 1977, plaintiff applied to the zoning administrator for a driveway permit necessitated by the proposed operation of an automobile parking lot at 1-9 East Walton Street in Chicago (hereinafter subject property). That application was disapproved on September 2, 1977, by the zoning administrator because it:

> "* * * does not conform with the applicable provisions of the Chicago Zoning Ordinance Chapter 194A of the Municipal Code of Chicago, specifically sec. 8.4—7."

Plaintiff thereafter filed an appeal from the zoning administrator's denial of his application based upon his theory that the operation of an open and nonaccessory parking lot is a permitted use under the zoning ordinance. At the same time, plaintiff filed an application for a variation in the nature of a special use which, if granted, would permit parking of motor vehicles 1½ tons and under on the subject property. At the initial hearing in this matter before the Board, plaintiff was permitted to file a memorandum in support of his views and his application for a special use separate and distinct from the appeal taken on the adverse ruling by the zoning administrator. The Board scheduled the hearing on the appeal prior to the hearing on the application for a special use variation.

The two matters were heard jointly on December 16, 1977. The Board found that pursuant to section 8.4—7(3) of the zoning ordinance, a public parking lot for the parking of private passenger automobiles in a B7-6 General Central Business District is not a permitted use, but a special use, and resolved that the appeal be denied. Plaintiff's application for a special use, however, was approved with findings that: a parking lot at that location was necessary for the public convenience in the high density area in which it was to be established; there was a great need at that location for public parking; the public health, safety and welfare would be adequately protected by virtue of the design, location and operation of the proposed parking lot; and the proposed use was compatible with the existing uses and improvements in the immediate area and therefore would not cause substantial injury to the value of other property in the

neighborhood. The special use was made subject to certain conditions relative to its construction and operation and the order provided that the use of the premises as a public parking lot "* * * shall terminate on December 16, 1980."

Plaintiff appealed to the circuit court from the Board's denial of the appeal relating to his permitted use theory, pursuant to appropriate provisions of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). The trial court considered plaintiff's complaint, the Board's answer consisting of the transcript of the record and plaintiff's motion for summary judgment. The basis for the summary judgment motion essentially questioned the zoning administrator's interpretation of the proposed use of the premises as a special use as a matter of law. As earlier related, the circuit court denied plaintiff's motion for summary judgment and affirmed the decision of the Board, from which orders this appeal proceeds.

Plaintiff's central argument is that the operation of an open and non-accessory public parking lot for private passenger automobiles in a B7-6 General Central Business District is a permitted use under the zoning ordinance and does not require the application for or issuance of a special use permit. He marshals the following provisions of the zoning ordinance, among others, in support of his theory. The uses permitted in a B7-6 district are provided for in section 8.3—7B:

"8.3—7 Permitted Uses—B7-5 to B7-7
General Central Business Districts.
* * *
B. The following uses are permitted in the B7-5 to B7-7 Districts inclusive. * * *
(1) Any use permitted in the B4-1 to B4-5 Districts inclusive as set forth in Section 8.3—4B, * * * unless otherwise set forth or superseded hereinafter * * *."

Section 8.3—4B lists permitted uses in the B4-1 to B4-5 districts, including:

"(27) Parking Lots, open and other than accessory, for the storage of private passenger automobiles, and subject to the provisions of Section 8.11."

Section 8.11 concerns certain technical regulations of such a facility and is not germane to this appeal. Relying upon the foregoing, plaintiff argues that the Board and the trial court were in error in denying him permitted use status for such a lot.

The Board's position acknowledges the foregoing provisions but emphasizes the language appearing in section 8.3—7B which states that permitted uses in B4-1 to B4-5 districts are applicable to B7-6 districts subject to the limitation, "* * * unless otherwise set forth or superseded

hereinafter * * *." The Board maintains there was a superseding provision contained in section 8.4—7(3), as follows:

"8.4—7 Special Uses—B7-5 To B7-7 General Central Business Districts.

* * *

(3) Parking lots, open and other than accessory, *for the storage of private passenger automobiles,* and subject to the provisions of Section 8.11. (Amend. Coun. J. 4-12-61, p. 4766; 4-21-78, p. 7632.)" (Emphasis supplied.)

Although the foregoing provisions appear to contradict plaintiff's claim that the section 8.3—4B "permitted use" set forth hereinabove is applicable, the kernel of his argument involves the wording of prior versions of 8.4—7(3), which from 1961 until again amended in 1978 read as follows:

"(3) Parking lots other than accessory *for the storage of motor vehicles 1½ tons and under,* subject to the provisions of Section 8.11. (Amend. 4-12-61 Coun. J. p. 4766)" (Emphasis supplied.)

The 1978 amendment reflected in this change was, according to plaintiff, passed between the date that his complaint in this cause was filed in the circuit court and the first hearing date. The Board's position is that, prior to the 1978 amendment, the term "motor vehicles 1½ tons and under" was intended to apply to private passenger automobiles, thereby subsuming under the special use designation of this section the establishment of a parking lot for such vehicles.

■■ Plaintiff's argument to the contrary centers around the fundamental contention that the ordinance as passed in 1957 staked out two separate classifications, one referring to private passenger automobiles and another referring to commercial vehicles only as "motor vehicles under 1½ ton capacity." Plaintiff asserts that the word "capacity" appeared in section 8.4—7(3) prior to the 1961 amendment and was inadvertently omitted from the amendatory language in 1961, a position he contends is buttressed by the inclusion of that word as part of the language to be omitted in the 1978 amendment to the same section. Capacity, he claims, cannot refer to private passenger vehicles, but rather to trucks or vans of the commercial variety. As examples of the separate treatment of parking lots for private passenger vehicles, plaintiff refers to sections 7.4—4(5), 8.3—5B, and 8.3—7B(1) of the zoning ordinance, which specifically refer to them as "private passenger automobiles." Such an argument would be helpful in ascertaining legislative intent in the absence of internal guides within the law being construed; however, the definition section in article 3 of the zoning ordinance, section 3.1, provides that " * * * [i]n the construction of this comprehensive amendment, the rules and definitions contained in this Article shall be observed and applied, except when the

context clearly indicates otherwise." Under the term "motor vehicle" the following definition appears:

> "A motor vehicle is *any passenger vehicle*, truck, truck-trailer, trailer or semi-trailer propelled or drawn by mechanical power. (Amend. 4-9-58. Coun. J. p. 7546.)" (Emphasis added.)

A well-established rule of statutory construction recognizes the power of a legislative body to articulate reasonable definitions of any terms within its enactment and such definitions for the purposes of the act will be sustained to the exclusion of hypothetical indulgences. *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 66, 108 N.E.2d 8; *Bohm v. State Employees' Retirement System* (1949), 404 Ill. 117, 120, 88 N.E.2d 29; *Krebs v. Thompson* (1944), 387 Ill. 471, 478, 56 N.E.2d 761; and *City of Chicago v. Pielet* (1950), 342 Ill. App. 201, 95 N.E.2d 528 (abstract).

The aforesaid definition must be considered in connection with plaintiff's theory that: the special use requirement of section 8.4—7 relating to motor vehicles 1½ tons and under is concerned with their capacities rather than their weights, as defendant would read the ordinance; to construe that passage otherwise would render the effect of the statutory language irrational, absurd and impossible to enforce; and such an interpretation would ignore the fact that only some passenger vehicles which do not exceed 3,000 pounds in weight could be parked on such a lot whereas all others would be excluded, thereby rendering the ordinance unconstitutional and unenforceable, contrary to the obligation that enactments be construed in a manner consistent with common sense and constitutionality, citing *Armour v. Mueller* (1976), 36 Ill. App. 3d 23, 30, 343 N.E.2d 251. Examining section 8.4—7(3) more closely, by substituting the ordinance definition of "motor vehicle" for the term motor vehicle appearing therein and restoring the word "capacity" to the provision as suggested by plaintiff, the ordinance meaning becomes even more clear by directing that "parking lots other than accessory for the storage of * * * ['* * * any passenger vehicle, truck, truck-trailer, trailer or semi-trailer propelled or drawn by mechanical power'] 1½ tons [capacity] and under" may be allowed as special uses in the B7-6 General Central Business District. The phrase "1½ tons [capacity] and under" is then easily reconciled as referring to its obvious objects, namely, the trucks, truck-trailers, trailers or semi-trailers, rather than passenger vehicles. To literally apply the "1½ ton" language to "any passenger vehicle" as well would indeed be irrational, absurd and contrary to the perceived intent of the drafting authority, which specifically provided the definition it requires to be applied. (*Candlewick Lake Utilities Co. v. Illinois Commerce Com.* (1978), 65 Ill. App. 3d 185, 187, 382 N.E.2d 88; *Armour v. Mueller.*) The fact that the city council chose the term "private passenger automobiles" elsewhere in the ordinance rather than "motor

vehicle" can be construed as language of exclusion: that *only* such vehicles and no others may be parked on lots within the designated use districts. This view is consonant with still another interpretive provision found in the zoning ordinance itself which states, in section 5.1(2), that in considering comparable provisions among regulations found in the ordinance, "* * * the regulations which are more restrictive * * * shall govern."

Nor do we find anything unreasonable in the legislative inclusion of "any passenger vehicle" within that class of vehicles which are to be treated as special uses for the purpose of open and nonaccessory parking lots in high density districts such as the B7-6 General Central Business District involved in this case. Special use district considerations may properly invoke administrative inquiry with respect to possible undesirable consequences characteristic of traffic-generating property uses that can produce excessive noise, traffic or safety hazards irrespective of vehicle size. (See, *e.g., Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 186, 166 N.E.2d 601, *cert. denied* (1960), 364 U.S. 475, 5 L. Ed. 2d 221, 81 S. Ct. 243; *Lincoln Central Association v. Zoning Board of Appeals* (1975), 30 Ill. App. 3d 258, 263-64, 332 N.E.2d 510.) The validity of the ordinance has not been challenged either facially or in its application to the subject property by plaintiff in any event, and its presumptive constitutionality is not before us.

■■ In coming to his conclusions, the trial judge stated that: the Board had developed an expertise in meeting its responsibilities under the zoning ordinance in having addressed similar questions every day, and since the Board had interpreted the particular B7 provisions, as they related to parking, in the same manner since 1961 without their having been amended by the city council, this absence of change was an implicit recognition that the Board's interpretation was correct and the decision was neither obviously wrong nor arbitrary. The trial court cited *Leischner v. Daniel's Restaurant, Inc.* (1977), 54 Ill. App. 3d 568, 370 N.E.2d 157, as authority for the proposition that an interpretation which has existed for many years of which a legislative body is aware, is presumed to be in accord with legislative intent where the language has not been amended. Acknowledging that the Board since 1961 has treated parking lots such as that which he proposes as special uses in B7-6 districts, plaintiff contends that there is no factual basis upon which to conclude that the city council has been aware of the Board's interpretation or has acquiesced therein, thereby rendering *Leischner* inapplicable. He urges that any such special use application if denied would not be appealed to the city council, but rather would be considered by the courts on administrative review. That contention carries with it some persuasiveness; however, the experience of an administrative agency in matters interpretive of the law under

which it operates, although not controlling, may be considered and brought to bear upon the ultimate decision to be reached. (See, *e.g.,* *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 555, 370 N.E.2d 1198; *Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 876, 376 N.E.2d 82; *Hofmeister v. Department of Registration and Education ex rel. Galvin* (1978), 62 Ill. App. 3d 777, 781, 379 N.E.2d 383; and *National Consolidated Industries, Ltd. v. Department of Insurance* (1979), 73 Ill. App. 3d 816, 822, 392 N.E.2d 295.) We find no error in the trial court's having considered the Board's expertise in this regard.

██ For the aforesaid reasons, the decision of the trial court affirming the determinations of the Board must be affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.