**INDEPENDENT SCHOOL DISTRICT NO. 4 OF HARPER COUNTY, Oklahoma aka Buffalo Public Schools and Board of Education of Independent School District No. 4 of Harper County, Oklahoma, Appellees,**

v.

**Susan ORANGE, Stanley Ed Manske, Norman Cooper and Merle Hosler, Hearing Panel, Appellants.**

**No. 77689.**

Court of Appeals of Oklahoma,
Division No. 1.

Nov. 10, 1992.

Marcus Holcomb, Holcomb, Harkins & Olmstead, Buffalo, for appellees.

Richard B. Wilkinson, Oklahoma City, for appellants.

## MEMORANDUM OPINION

ADAMS, Presiding Judge:

After a hearing panel convened under 70 O.S.1981 § 6–103.4 directed the reinstatement of Appellant Susan Orange, Appellees brought an action for judicial review of that decision in district court. The trial court reversed the panel decision, finding it "clearly erroneous", and remanded the case for further proceedings.[1] Orange appeals.[2] Because we conclude the trial court improperly applied its standard of review, we reverse the decision of the trial court, and reinstate the panel's order.

### FACTS

Orange was a tenured teacher employed by Independent School District No. 4 of Harper County (School) to work in the Buffalo Public Schools. Orange, who had fourteen years experience including nine years with School, was employed as the library media specialist and was assigned to teach two seventh grade geography courses. During the first semester of the 1989–1990 school year, Gene Baird, the first-year junior and senior high school principal, began observing the junior high classes in order to evaluate teacher performance.

After Baird and Orange had a "preobservation conference" on December 12, 1989, he viewed her classes on December 13, 1989, January 5, 1990, February 16, 1990, February 26, 1990, March 2, 1990, March 5, 1990, and March 19, 1990. In December, after the first observation Orange and Baird met briefly but, at least according to Orange, did not discuss her teaching performance. They also met briefly after an observation conducted on February 16.

On February 26, 1990, Orange received a copy of the first two written evaluations.[3] Each written evaluation covered two observations. The first evaluation, covering the December 16 and January 5 observations, was generally favorable, however, Baird did recommend Orange improve the discipline of her students. Specifically, he observed that certain students in the all-boys class would occasionally talk at once without raising their hands, become disruptive or make inappropriate remarks. The second evaluation covered the February observations. On that same date, Baird gave Orange a "plan of improvement" for the first time. The plan was prepared by Baird

1. Noting the trial court's remand order, the Supreme Court directed the appellants to show cause why this appeal should not be dismissed as premature. Appellants responded, arguing the remand order was of no effect because the trial court did not direct the panel to take further evidence or reconsider its decision. Concluding the appellants' response "appears to satisfy this court's inquiry into its jurisdiction," the Supreme Court entered an order on May 12, 1992 directing that this appeal proceed on the merits.

2. The other named appellants, members of the hearing panel, were listed as appellants in the Petition in Error, however, only Orange, the real party in interest, briefed.

3. On each occasion when Orange was given a copy of a teacher evaluation or conference memorandum, she was asked to sign and date the item as an acknowledgement of receipt.

and addressed a lack of student discipline in her classes.[4] Baird and Orange signed and dated a principal-teacher conference form which included an admonishment that "if this is not corrected it may lead to your teaching contract not being renewed."

On March 6, 1990, Baird gave Orange a revised plan of improvement, and on March 20, they met again to review an evaluation covering the March 19 observation, which for the first time, assessed Orange's performance as the library media specialist.[5] Baird also gave Orange a "Letter of Admonishment" setting out three primary areas of concern: (1) student discipline; (2) classroom control; and (3) teaching method. He further advised her that unless significant improvement was shown, her contract was subject to nonrenewal. The Letter of Admonishment did not address any shortcomings relating to library management.

On March 27, 1990, Baird and Orange had their final conference. For the first time Orange received evaluations covering the March 2 and March 5 observations, and Baird told her he intended to recommend to the school superintendent that her contact for the next school year not be renewed. On April 2, 1990, the board, acting upon the superintendent's recommendation, voted to not renew Orange's contract for the 1990–1991 school year due to her "willful neglect of duty and incompetency."

Orange requested a hearing before a statutorily-mandated hearing panel, and on July 11, 1990, the panel conducted a hearing.[6] The hearing panel entered an "order" directing Orange's reinstatement. In its findings of fact and conclusions of law, the hearing panel stated School had failed to prove by a preponderance of the evidence that Orange had "knowingly or purposefully failed to perform one or more essential job duties." The panel also found the evidence was conflicting on whether Orange was performing her duties at the "level of competence known to be expected or required by [School]." As noted previously, the trial court reversed this order in the review proceeding brought by the school.

## ANALYSIS OF THE ISSUES

A tenured teacher may be either dismissed or not reemployed on several statutory grounds. 70 O.S.1981 § 6–103(A). Here School voted not to offer Orange a new contract of employment on the statuto-

---

4. The plan required Orange to implement the following:
  1) Students will remain in chairs until they have permission to get out—then only for acceptable actions such as sharpening pencil, asking teacher question, etc. I suggested to Mrs. Orange to spread chairs out so students are not so close together.
  2) Students will raise their hands to respond/ask questions in class. They will be allowed to respond only when called on by the teacher. Spontaneous outbursts will not be tolerated. Questions/responses must relate to subject being discussed.
  3) Students will treat teacher and each other with respect.
  4) Students will stay on task the entire period.—GEOGRAPHY.
  5) Students will speak softer (not in a loud voice) when they ask/respond to questions.
  6) Students will be allowed to talk/respond one at a time/then only when called upon.

5. The revised plan provided:
  1) Mrs. Orange has a discipline policy posted at the front of the room. The plan must be applied—fairly and consistently. The rules must be applied at all times.

2) Student referral notices must list all students involved in a given incident. (Everyone must be included in case there are questions about the incident.)
  3) Classroom control must be maintained at all times. Students must remain under the direct supervision of Mrs. Orange at all times. If students are to work in the library, take all students to the library. Enforce rules of the school and classroom.
  4) Mrs. Orange must be in charge of teaching the class. At least 25 minutes a day needs to be instruction by Mrs. Orange. The remainder of the time needs to be supervised assessment of student progress/understanding.
  5) Mrs. Orange must turn in a weekly lesson plan for each class and a xerox copy of grade book.

6. A tenured teacher may challenge a decision of nonreemployment by requesting a full due process hearing before a hearing panel. 70 O.S. 1981 § 6–103.4. The decision of the hearing panel as contained in its report is final and shall be obeyed by the parties involved unless an appeal is taken to district court. 70 O.S.1981 § 6–103.12.

ry grounds that her performance constituted willful neglect of duty and incompetency. School argues the evidence shows Baird worked diligently with Orange to correct her deficient teaching skills, she did not respond satisfactorily within a reasonable time, and consequently a decision was made to not renew her contract. School argues the evidence supports a finding that from December, 1989 through March, 1990, Baird counseled with Orange on a regular basis concerning her job performance, through both informal meetings and more formal written evaluations and conference reports. However, according to School's view, her classes remained "out of control" and deteriorated significantly leading to the March 27 decision not to renew her contract.

Orange, on the other hand, argues Baird first gave her notice of disciplinary problems in her classroom on February 26, and of apparent problems with her management of the library on March 20. Therefore, she contends there is no credible evidence she knowingly, intentionally, or purposefully violated a rule or duty owed to School because she was afforded only thirteen instructional days to rectify the alleged deficiencies in her teaching performance. Moreover, she submits School's evidence failed to establish her "incompetency," as that term was construed in *Childers v. Independent School District No. 1 of Bryan County*, 645 P.2d 992 (Okla.1981).

■ The Oklahoma Administrative Procedures Act, 75 O.S.Supp.1989 § 250 *et seq.*, like the Model State Administrative Procedure Act, Revised 1961 Act (Model Act) which it followed, limits judicial review of an administrative decision, like that of the hearing panel, by a "clearly erroneous"

test.[7] Oklahoma courts have not fully defined the limits of this standard, however, courts in other jurisdiction which have adopted the Model Act have addressed this issue.

Under this standard unless the reviewing court upon examination of the complete record is left with a "definite and firm conviction that a mistake has been committed," the decision will not be reversed. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Agsalud v. Lee,* 66 Hawaii 425, 664 P.2d 734 (1983); *Brurud v. Judge Moving & Storage Co.*, 172 Mont. 249, 563 P.2d 558 (1977); *Renton Educ. Ass'n v. Public Employment Relations Comm'n*, 101 Wash.2d 435, 680 P.2d 40 (1984). When reviewing the record, the court may not substitute its judgment for that of the agency, but rather, it must only inquire whether the agency's decision was based on a consideration of relevant facts and whether there was a clear error of judgment. *Washington State Farm Bureau v. Marshall*, 625 F.2d 296 (9th Cir.1980).

■ A school principal's authority to recommend the nonrenewal of a teacher's contract who is no longer an effective educator is not the issue before us. While it is true that a school principal has an obligation to the children in his or her charge to see that competent and effective educators are employed, it is also true that teachers must be treated fairly and may not be subject to discharge without good cause. The courts are obligated to consider the rights of the teacher, the school board and the students when determining cases involving the dismissal or nonrenewal of a teacher's contract. *Childers*, 645 P.2d at 994. The pertinent issue here is whether a fair and

---

7. Title 75 O.S.1981 § 322(1) provides in relevant part:

    In any proceeding for the review of an agency order, the Supreme Court or the district court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review

have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

   . . . .

   (e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence ... including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact....

impartial decision was rendered based on the evidence presented.

■ We know of no authority, and School has not directed our attention to any, which establishes a presumption in favor of a school board, that its decision to terminate or not renew a contract of a tenured teacher is supported by just cause. To the contrary, there is a general proposition that a presumption of validity attaches to the exercise of expertise when an administrative agency is reviewed by the judiciary. *Tulsa Area Hosp. Council v. Oral Roberts Univ.*, 626 P.2d 316 (Okla.1981). Our obligation, like that of the trial court, is to examine the evidence before the hearing panel to determine whether that decision was "clearly erroneous."

■ The evidence indicates 1989–1990 was the first school year Orange had taught geography, a subject which Baird had taught frequently during his eighteen years with School. Orange spent the majority of her workday in the library performing her duties as library media specialist assisting students and faculty. Baird admitted he conducted Orange's evaluation with a predisposed opinion that she was not a competent teacher and aware that seventh graders at School frequently had a difficult time making a transition from grade school to junior high school. At the outset, Baird's primary concern was "classroom control" with little, if any, criticism directed towards Orange's lesson plan or method of presentation. Baird testified Orange was a fine person who at times was doing an "outstanding job" and who "bent over backwards to be cooperative."

Much of Baird's criticism of Orange's classroom performance was premised on his observations of misconduct, inappropriate behavior, rudeness, and enthusiasm or a lack thereof, on the part of the students in the two geography classes. After receiving the February 26 evaluation—the date upon which the hearing panel concluded Orange was first informed in writing of certain deficiencies—Orange posted the required disciplinary policy, changed the spacing of the students' desks, and sent students who violated the rules to the principal's office. There is competent evidence Orange attempted to comply with Baird's directives for improving her classroom environment. Moreover, since Orange was not advised of any problems with the library until one week before the decision was made to not renew her contract, the hearing panel could reasonably conclude that School had not shown by a preponderance of the evidence that Orange had willfully neglected her duties there.

The fact that no "third-party testimony" corroborated much of Orange's testimony neither renders the latter incompetent nor less substantial. The bulk of the testimony on the issue of whether Orange had been given "reasonable time for improvement," as required by 70 O.S.1981 § 6–103.2, came from two witnesses—Orange and Baird. The determination of the credibility of witnesses is within the province of the hearing panel, and if there is evidence that reasonably supports the decision it must be upheld. *Dorman v. Delponte*, 41 Conn.Sup. 437, 582 A.2d 473 (1990). *Compare Central Plastics Co. v. Goodson*, 537 P.2d 330 (Okla.1975). A preponderance is not determined simply by the number of witnesses the litigants may call to testify. The testimony of one credible witness may be entitled to more weight than the testimony of many others who may be less credible. *Peyton v. McCaslin*, 417 P.2d 316 (Okla.1966). It was for the hearing panel to determine the credibility of the witnesses and to resolve the obvious discrepancies in the evidence.

The findings and conclusions of the administrative agency on questions of fact are held to be prima facie true and correct, and on review the court will not reweigh the evidence or make an independent determination of fact. The existence of conflicting evidence is not a sufficient reason to warrant reversal. *Hofmeister v. Department of Registration & Educ.*, 62 Ill. App.3d 777, 19 Ill.Dec. 719, 379 N.E.2d 383 (1978). We cannot substitute our judgment for that of the hearing panel in determining the weight to be given the evidence presented.

In view of the substantial evidence supporting it, we cannot conclude the hearing panel's decision to reinstate Orange with full employment status was clearly erroneous, and trial court's order doing so was erroneous. The judgment of the trial court is reversed, and the hearing panel's order is reinstated.

REVERSED.

BAILEY, P.J., concurs.

GARRETT, J., dissents.