Michael L. CHILDERS,
Plaintiff-Appellee,

v.

INDEPENDENT SCHOOL DISTRICT NO. 1 OF BRYAN COUNTY, State of Oklahoma, a/k/a Silo Public Schools, Defendant-Appellant.

No. 55697.

Supreme Court of Oklahoma.

Oct. 20, 1981.

Rehearing Denied June 15, 1982.

over the non-renewal of his teaching contract. Appellant appeals from a judgment of the District Court reversing the School Board's and Hearing Panel's decision not to renew the teacher's employment contract on the grounds of incompetency and willful neglect of duty. The trial court ordered the teacher to be reinstated with back pay.

Michael L. Childers, Appellee, has been employed as a teacher by the Appellant, Silo Public Schools, since the 1974–75 school year. For his first four years, Appellee taught Vocational-Agriculture. In the spring of 1978, Appellee was reassigned to teach Social Studies.

On March 26, 1979, the Silo Board of Education voted to not rehire Appellee and gave notice to Appellee on April 5, 1979, that his teaching contract for the school year 1979–80 would not be renewed on the grounds of "willful neglect of duty" and "incompetency".

Appellee, a tenured teacher, requested a hearing pursuant to 70 O.S. § 6–103.4. A Hearing Judge and Panel were selected, and a two-day Administrative Hearing was conducted at the Bryan County Courthouse in Durant, Oklahoma, on the 1st and 2nd of August, 1979. Thereafter, the Hearing Panel issued its written Report of Hearing sustaining the decision of the Silo Board of Education to non-renew Appellee's teaching contract on the grounds of willful neglect of duty and incompetency.

Pursuant to the provisions of 70 O.S. § 6–103.12 and the provisions of the Oklahoma Administrative Procedure Act, 75 O.S. § 301 et seq., Appellee sought judicial review of the ruling of the Hearing Panel in the District Court of Bryan County. On July 25, 1980, the District Court of Bryan County entered its order reversing the decision of the Hearing Panel on the grounds that Appellant had failed to comply with the procedural provisions of 70 O.S. § 6–102.2 [1] and § 6–103.2.[2] The District Court

Fagin, Hewett, Mathews & Fagin, Clifford A. Jones, Oklahoma City, for plaintiff-appellee.

Ronald L. Day, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for defendant-appellant.

BARNES, Vice Chief Justice:

This case involves a controversy between a tenured schoolteacher and a School Board

1. Title 70 O.S.1977, § 6–102.2, provides in pertinent part:

"Prior to October 15, 1977, each board of education shall establish ... a written policy of

reinstated Appellee as a tenured teacher with back pay.

Appellant, Silo Public Schools, is appealing the decision of the District Court pursuant to the provisions of 70 O.S. § 323. Appellant raises essentially three points of claimed error: (1) The District Court erred in finding that Silo Public Schools failed to comply with the procedural provisions of 70 O.S. §§ 6–102.2 and 6–103.2; (2) the District Court erred in reinstating the tenured teacher; (3) the District Court lacked jurisdiction to award damages.

■ Teacher evaluations and pretermination rights provided in 70 O.S. § 6–102.1 et seq., were enacted in 1977. The State Board of Education Rules and Regulations at page 5 state that: "The number one reason (for the legislation) is to improve the quality of teaching." At the outset, it should be stated that the dismissal of teachers and non-renewal of their teaching contracts is sometimes a complex, difficult process, with serious implications. Because of the fact that under the statutory procedures, the dismissal or non-renewal of a teacher requires a long and time-consuming effort, school administrators and Boards of Education are often reluctant to institute such procedures against teachers who ought to be dismissed. As a result, the students suffer from the quality of their education. On the other hand, teachers, at times in the past, have not been fairly treated and have been dismissed or non-renewed without good reason. In determining cases involving the dismissal or non-renewal of a teacher's contract, the courts are obligated to consider the rights of the teacher, the rights of the School Board, and the rights of the school children to receive a quality education in a proper school atmosphere. See *Jacobson, Sperry & Jensen, The Dismissal and Non-reemployment of Teachers, 1 at J.L. and Educ., 435 (1972).*

Our statute provides that a tenured teacher must be evaluated at least once every three years, and such evaluation must be in writing.[3] A teacher must be provided a copy of the evaluation and shall be given an opportunity to respond thereto within two weeks after the evaluation.[4]

evaluation for all teachers . . . Every policy so adopted shall:

"(1) Be prescribed in writing at the time of adoption and at all times when amendments thereto are adopted. The original policy and all amendments to the policy shall be promptly made available to all teachers;

"(2) Provide that all evaluations be made in writing and that evaluation documents and responses thereto are to be maintained in a personnel file for each teacher;

"(3) Provide that commencing not later than the 1977–1978 school year every probationary teacher shall be evaluated at least two (2) times per school year, once prior to November 15 and once prior to February 10 of each year, and that every tenured teacher shall be evaluated at least once every three (3) years, except as otherwise provided by law; . . ."

2. Title 70 O.S.1977, § 6–103–2, states:

"Whenever a principal who has the administrative responsibility under the supervision of the superintendent of a school district to plan, manage, operate and evaluate the educational program of a particular school attendance area and who has carried out the provisions of Section 2 of this act (§ 6–102.2) believes that it is necessary to admonish a teacher in the district for a reason he believes may lead to the teacher's dismissal or nonreemployment, the principal shall:

"1. Bring the matter to the attention of the teacher, in writing, and make a reasonable effort to assist the teacher to correct whatever appears to be the cause for potential dismissal or nonreemployment; and

"2. Allow a reasonable time for improvement, which time shall not exceed two (2) months. The nature and gravity of the teacher's conduct shall be considered in determining what length of time would be reasonable. If the teacher does not correct the cause for potential dismissal or nonreemployment, within a reasonable length of time, the principal shall make a recommendation to the superintendent of the school district for the dismissal or nonreemployment of the teacher."

3. Title 70 O.S.1977, § 6–102.2, supra, at footnote 1.

4. Title 70 O.S.1977, § 6–102.3, states in pertinent part:

"Whenever any evaluation is made of a teacher, a true copy of the evaluation shall be presented to the teacher. The teacher shall acknowledge the written evaluation by his signature thereon. Within two (2) weeks after the evaluation, the teacher may respond and said response shall be made part of the record. . . ."

Statutory grounds for dismissal or non-renewal are set forth in 70 O.S.1977, § 6–103. Two of the grounds listed in such statute are "willful neglect of duty" and "incompetency".[5]

Whenever it can be validly inferred from the teacher's actions that a teacher's employment is in jeopardy because of inadequate professional performance, and whenever the principal believes that it is necessary, the principal shall (1) bring the matter to the attention of the teacher in writing; (2) make a "reasonable effort" to assist the teacher; and (3) allow a "reasonable time for improvement", not to exceed two months.[6]

In compliance with 70 O.S.1977, § 6–102.-2, the Silo Board of Education adopted an evaluation policy, as amended, on September 26, 1977. Such evaluation policy required, however, that all teachers, including tenured teachers, would be evaluated twice each year instead of the statutory requirement for evaluation of tenured teachers once every three years.

Appellee's first statutory evaluation was completed by the principal on September 29, 1978, and acknowledged by Appellee on November 7, 1978. The second statutory evaluation was prepared by the principal in February of 1979 and acknowledged by Appellee on February 26, 1979.

In addition to the evaluations discussed above, the Silo Board of Education requested for the school year 1978–79 that additional evaluations be conducted on Appellee each nine weeks. Further, from time to time, the principal would write up and place in his own file certain incident reports concerning actions of Appellee.

■ The record reflects that the various problems, concerning violation of school rules and regulations, conflict between Appellee and his superiors and other teachers, and lack of classroom discipline, were brought to Appellee's attention, orally and in writing. The official evaluations include references to several specific problems and were brought to Appellee's attention within a timely manner after they were prepared. In addition, some of the "incident reports" were brought to his attention in January of 1979. The first nine weeks and second nine weeks so-called "special evaluations" and other "incident reports" were brought to Appellee's attention on February 23, 1979, approximately thirty-one days before the recommendation not to renew Appellee's contract was made to the Board of Education. Thus, Appellant complied with Section 6–103.2 and brought to Appellee's attention in writing the various problems of performance. The second part of Section 6–103.2(1), that a reasonable effort be made to assist the teacher was also complied with. The nature of the problems may well have a definite bearing on what can reasonably be expected from the administration in the way of assistance. The problems which existed were personal to Mr. Childers; i.e., lack of discipline in his classes, and failure to work with administrators and fellow-teachers. These types of problems do not lend themselves to assistance or to a program for improvement. The Hearing Panel's findings that the administration made a reasonable effort to assist the teacher is not clearly erroneous in view of the circumstances and record evidence presented. See 75 O.S. § 322(1)(e), and *Oklahoma Water Resources Board v. Central Oklahoma Mas-*

5. Title 70 O.S.1977, § 6–103, provides in pertinent part:

"A. Subject to the provisions of Sections 6–102.1 through 6–102.3 and 6–103.1 through 6–103.12 of Title 70 of the Oklahoma Statutes, any teacher may be dismissed at any time or not reemployed for immorality, willful neglect of duty, cruelty, incompetency, teaching disloyalty to the American Constitutional system of government, or any reason involving moral turpitude and any teacher shall be dismissed at any time or not reemployed if convicted of a felony, or if convicted of a felony resulting from a felony violation of the narcotic laws of the United States or the State of Oklahoma. . . .

"B. In determining whether the professional performance of a teacher is inadequate, consideration may be given to any written standards of performance which may have been adopted by the State Board of Education, or any education-oriented organization or agency. . . ."

6. Title 70 O.S.1977, § 6–103.2, supra, at footnote 2.

ter *Conservancy District*, 464 P.2d 748 (Okl. 1969).

■ Section 6–103.2(2), requiring that a "reasonable time for improvement", not to exceed two months, be given the teacher, was also satisfied by Appellant. A "reasonable time for improvement" is based upon the nature of the teacher's conduct and the particular circumstances involved. Various incidents concerning Appellee occurred throughout the school year. Such incidents concerned school rules and regulations, conflict between Appellee and his superiors, and lack of classroom discipline. They were brought to Appellee's attention, the latest date being February 23, 1979, approximately one month before the recommendation was made to the Board of Education not to renew Appellee's teaching contract. Under the circumstances of this case, the Hearing Panel's finding that a reasonable time for improvement was allowed is not clearly erroneous in view of the record evidence. See 75 O.S. § 322(1)(e).

In view of our discussion above, we hold that Appellant complied with the procedural provisions of 70 O.S.1977, § 6–102.2 and § 6–103.2.

The District Court's decision reversed the Hearing Panel and reinstated Appellee on the basis that the procedural provisions of 70 O.S. § 6–102.2 and § 6–103.2 were not followed by Appellant. Such decision, however, did not address the finding of the Hearing Panel that there was substantial evidence showing that Appellee was guilty of "incompetency" and "willful neglect of duty". In view of our holding above, it is necessary therefore to address the issue of whether Appellant presented substantial evidence to support its reasons for non-renewal. The Hearing Panel's findings of fact concerning such issue cannot be reversed or set aside unless they are:

> "clearly erroneous in view of the reliable, material, probative and substantial competent evidence ... including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the

weight of the evidence for that of the agency on question of fact; ..."
75 O.S. § 322(1)(e).

Title 70 O.S. § 6–103 makes the dismissal or non-reemployment of a tenured teacher dependent upon proof by the School Board of one or more of the enumerated statutory grounds. The grounds asserted in this case by Appellant were willful neglect of duty and incompetency.

■ There are no Oklahoma court decisions which give a general definition of "willful neglect of duty"; however, in *Simpson v. Oklahoma Alcoholic Beverage Control Board*, 409 P.2d 364 (Okl.1965), we stated that it is necessary to analyze the statute in which the word "willful" is used to determine the legislative intent and purpose. In analyzing the Alcoholic Beverage Control Act, we stated in *Oklahoma Alcoholic Beverage Control Board v. Milam*, 393 P.2d 823 (Okl.1964), that the word "willfully" is of similar import or the equivalent of "knowingly". In interpreting 70 O.S. § 6–103, we find that the Oklahoma Legislature intended only a "knowingly and purposeful" violation definition be applied in order for a teacher to be guilty of willful neglect of duty. Since the primary purpose of the teachers' Evaluation Act is to upgrade the quality of the teaching profession in the State of Oklahoma, the Act could not require that a teacher's neglect of duty be with evil intent and with purpose to do harm before the teacher could be fired and not renewed.

Black's Law Dictionary defines "incompetency" as: "lack of ability, legal qualification, or fitness to discharge the required duty." The Oklahoma State School Board Association states that: "Incompetency and willful neglect of duty are not synonymous in that willful neglect means the teacher has intentionally decided not to perform some duty that the teacher was aware of, while incompetency can include a lesser degree of inadequacy which is similar to negligence." See Critical Issues in School Law, Chap. 6(A), pages 50–51. In Independent School District No. 8 of Tulsa County, Okla-

homa, at Sperry, Oklahoma, versus Opal Walker, July 7, 1978, the Hearing Panel Judge defined in his decision "incompetency" as follows:

"12. 'Incompetency' as used in 70 O.S. § 6–103(A) is found to mean the inability or the failure to perform the job or task at the level or degree of performance set by or expected by the employer. An alternate way of stating this is failure to perform one or more of the essential parts of the job requirements, or failure to perform one or more necessary or imperative criteria without which the performance is inadequate or is unacceptable. Incompetent employment performance is that kind of performance which is in some essential part below the level, degree or standard of performance established and expected by the employer."

The conduct alleged by the School Board to justify its charge of incompetency and willful neglect of duty can be classified in three broad categories—violation of its rules and regulations, conflict between the teacher and his superiors and school personnel, and lack of classroom discipline.

■ The record reflects numerous incidences of Appellee's misconducts and deficiencies in these three categories, none of which, standing alone, would justify a teacher's non-renewal. However, when all of the incidences are taken together, such a pattern of deficiencies constitutes grounds for non-renewal of Appellee's contract on the basis of incompetency and/or willful neglect of duty. The evidence reflects that on several occasions Appellee failed to maintain the proper classroom discipline and supervision expected from a teacher. The evidence further reflects that Appellee failed to follow the rules and regulations of the administration on several occasions. Lastly, there was repeated and continuing friction between Appellee and the administrators and between Appellee and other school teachers, to the extent that it disrupted the school.

We cannot find that the Hearing Panel's decision that Appellee was guilty of incompetency and willful neglect of duty was clearly erroneous in view of the substantial record evidence. See 75 O.S. § 322(1)(e). Since the Hearing Panel's decision was supported by substantial competent evidence, we cannot substitute our judgment as to the weight of the evidence for that of the Hearing Panel. *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District, supra.*

In view of our holding herein, we deem it unnecessary to discuss the other alleged errors of the District Court raised by the Appellee herein concerning reinstatement and back pay.

For the above stated reasons, the judgment of the District Court must be reversed and the case remanded to the District Court with directions to affirm the decision of the Hearing Panel.

**REVERSED AND REMANDED WITH DIRECTIONS.**

IRWIN, C. J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

OPALA, J., dissents.

OPALA, Justice, dissenting:

My dissent is not from the court's pronouncement on the merits of this case but from its unwarranted exercise of appellate jurisdiction.

The instant appeal is, in my view, laden with a fatal postural infirmity. *It should be dismissed* for want of jurisdiction to entertain the issues sought to be presented.

Appellee's motion to dismiss this appeal—previously denied by a divided court without a bar to its re-argument on the merits [1] —remains a fit and available subject for our reconsideration. [2] I would re-inquire into our jurisdiction and hold that neither

---

1. The court's denial of appellee's motion to dismiss, effected by order of December 8, 1980, was concurred in by five justices; two dissented and two are shown as "not voting".

2. Unless there is an express indication to the contrary, an order of this court that denies appellee's motion to dismiss appeal is always subject to reconsideration. *Sawyer v. Sawyer,* 182 Okl. 348, 77 P.2d 703, 704 [1938]; *Mount v.*

of the two petitions-in-error on file in the case was effective to commence a timely appeal from the judgment to be reviewed. *The original petition-in-error, filed here August 22, 1980, was premature, while the amended petition-in-error of November 12, 1980 came too late.*

The school district [appellant] seeks to reverse the judgment reinstating a tenured teacher [teacher] on review in the district court of a contrary decision rendered in an "administrative due process" proceeding before a statutory "hearing panel".[3]

The decision we are called upon to set aside is in two parts:

(a) Part I—which consists of the trial court's July 25, 1980 order, memorialized August 1, 1980—*unconditionally* reinstates the teacher to his tenured position, with the effective date related back to the date of his non-reemployment, and specifically defers—to a separate hearing—the issue of back-pay award; and

(b) Part II—effected by "supplemental order" dated September 9, 1980 and memorialized September 11, 1980—which postpones the effective date of the teacher's reinstatement "until such time as [he] holds a valid certificate to teach social studies" and awards him $10,284.50 in back pay, prejudgment interest and costs.

Appellant seeks corrective relief from both Parts of the bifurcated decision.

## I

### Part II of the trial court's decision is clearly beyond the reach of this court's reviewing power.

Assuming that Parts I and II may be regarded as both being appealable under

some provisions of our law, Part II is clearly beyond the reach of our reviewing power. The amended petition-in-error was not filed until November 12, 1980—more than thirty (30) days from the day Part II order was dated and from its record entry in the trial court. Failure to file petition-in-error within thirty (30) days from the appealable disposition to be reviewed constitutes a fatal jurisdictional defect. 12 O.S.1971 § 990; *Burk v. Burk,* Okl., 516 P.2d 268, 270 [1973].

The original petition-in-error, filed here August 22, 1980—before Part II of the trial court's decision was effected and entered— was not effective to bring Part II for our review. The appellate court's power to administer corrective relief is no less fatally affected by the appellant's prematurity in meeting jurisdictional requirements than it is by his tardiness.[4] A most eloquent example of this doctrine is afforded by a recent unpublished opinion by the Court of Appeals, Div. 1, in which this court denied certiorari.[5] In that case the aggrieved party appealed from a decision in a mortgage foreclosure suit by which the trial court resolved all the issues *except* that of attorney's fee to the prevailing party. The Court of Appeals correctly concluded the appeal was premature and hence dismissible.

## II

### Part I of the trial court's decision does not constitute a "final judgment" and is hence unappealable.

Corrective relief from the district court's decision on review of a hearing panel's dis-

---

Schulte, 193 Okl. 335, 143 P.2d 424, 426 [1943]; *Red Eagle v. Cannon,* 198 Okl. 330, 177 P.2d 841, 842 [1947]; *Chicago R. I. & P. R. Co. v. American Airlines, Inc.,* Okl., 408 P.2d 789, 793 [1965]; and *Arkansas Louisiana Gas Co. v. McBroom,* Okl.App., 526 P.2d 509, 510 [1974].

3. Administrative review of dismissal and non-reemployment decisions by the local board of education are authorized by 70 O.S.Supp.1977 § 6–103.4. A hearing panel of three individuals is provided for these "due process hearings" by 70 O.S.Supp.1977 §§ 6–103.5 et seq.

4. *Porter v. Tayer,* Okl., 385 P.2d 808, 815 [1963]; *Merchants Delivery Service v. Joe Esco Tire Co.,* Okl., 497 P.2d 766 [1972]; see also, *Delhi Pipeline Corporation v. Mayhall,* Okl. App., 546 P.2d 1019, 1020 [1976] and *Guaranty National Bank v. Lister,* Okl.App., 538 P.2d 616 [1975].

5. The *Prudential Insurance Company of America v. Evans,* No. 52,615, opinion of March 17, 1981.

position of an "administrative due process hearing" for a dismissed or non-reemployed teacher is authorized by 70 O.S.Supp.1977 § 6–103.12 which expressly provides that all judicial proceedings are to be governed by the "Oklahoma Administrative Procedures Act." That act clearly and unmistakably contemplates but *one* indivisible and non-severable appellate review of "any final judgment of the district court". 75 O.S. 1971 § 323. Part I of the trial court's decision cannot qualify as "a final judgment". So long as a *single* tendered issue, which has not been withdrawn from consideration by waiver or abandonment, remains unresolved in the case, final judgment is not possible of rendition.[6] When Part I of the decision was rendered, the issue of back pay award remained pending and undetermined. Nay, the trial court expressly deferred its resolution by the terms of its Part I order.

*Before Part II order was effected, appellant itself interjected and tendered an additional issue for resolution by the trial court. This occurred when appellant requested that the teacher's reinstatement be conditioned on his securing a valid certificate to teach social science. The request presented clearly not a post-judgment issue but one implicit in the merits of the proceeding on review of the claim for reinstatement.*

Appellant urges that Part I decision should be treated as final judgment because:

(1) it reinstates the teacher by order which constitutes the functional equivalent of injunction relief—a disposition that is considered final and appealable under the terms of 12 O.S.1971 § 952(b)2; and

(2) proceedings occurring after Part I disposition was rendered, which led to Part II order, were all unauthorized as allegedly outside the framework of issues properly litigable in a district court proceeding to review administrative action.

Appellant's argument is without merit because it misdirects the critical inquiry to be made. The district court is a constitutional tribunal of unlimited jurisdiction—an omni-competent single-level trial court with full power to review administrative action. Art. 7 § 7(a), Okl.Const. The question here is not whether in the procedural framework, in which the quest for a back-pay award was presented in the post-Part I stage, the issue was correctly litigated. Neither should it be of any moment to us here that Part I order would have constituted a final judgment in an injunction suit. Rather, the dispositive jurisdictional question is whether—*in the posture in which the proceeding for review then stood before the district court*—Part I order left any unwithdrawn issues pending and unresolved. There is no doubt in my mind but that it did.

The district court proceeding to review an agency decision, pursuant to 75 O.S.1971 § 323, is non-severable and indivisible. The cited statute plainly contemplates *but one* appeal from the "final judgment". When the disposition of the proceeding is effected, as it was here, in successive stages, by several dispositional orders, *it cannot create multiple appeals*, no matter how much any of the intermediate orders made by the trial court may resemble decisions which, in the context of another district court action, might be regarded as final or otherwise appealable.

In legal contemplation there can be but *one* final judgment in an action, although it is possible to have several successive post-judgment decisions that are appealable.[7] Multiple judgments cannot co-exist in the same case. The final judgment is effected when *all* the issues tendered are resolved. Both the issue of back pay and that of making the teacher's reinstatement conditioned on his securing a current teaching

---

6. 12 O.S.1971 § 681 defines judgment as "... the final determination of the rights of the parties in an action". *Porter v. Tayer,* supra note 4; *King v. Finnell,* Okl., 603 P.2d 754 [1979]; and *Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 374 [1979].

7. *Methvin v. Methvin,* 191 Okl. 177, 127 P.2d 186, 188 [1942]; *State ex rel. Board of Affairs v. Neff,* 205 Okl. 205, 236 P.2d 681, 683 [1951]; *Stubblefield v. General Motors Acceptance Corp.,* Okl., 619 P.2d 620, 624 [1980].

certificate remained to be resolved when Part I order was effected. These issues, which were being pressed and remained unwithdrawn by waiver or abandonment, came to be resolved by the Part II order. It is *that very order* which constituted the "final judgment" in the case as the term is used in 75 O.S.1971 § 323. *In short, in district court proceedings under the Administrative Procedures Act only one judgment is possible. From that judgment there can be but one appeal. Appellant sought to dichotomize both the district court judgment and the single appeal that is made available by § 323.*

Appellate courts are powerless to grant dispensation from legislatively-imposed jurisdictional requirements.[8]

The appeal should be dismissed.

---

8. *Estate of O'Bannon*, 633 P.2d 741 (Okl.1981).