320 F.3d 1119
 Dempsey Keach BALLARD, also known as Keach Ballard, Plaintiff-Appellant,
v.
INDEPENDENT SCHOOL DISTRICT NO. 4 OF BRYAN COUNTY, Oklahoma, otherwise known as the Colbert School District; AL White, individually; W.E. "Rusty" Brigman, individually; Jarvis Dobbs, individually, Defendants-Appellees.
 No. 00-7099.
 United States Court of Appeals, Tenth Circuit.
 February 27, 2003.
 
 CERTIFICATION OF STATE LAW QUESTION
 SEYMOUR, Circuit Judge.
 
 
 1
 The United States Court of Appeals for the Tenth Circuit, on its own motion pursuant to 10th Cir. R. 27.1 and OKLA. STAT. tit. 20, §§ 1601-11, hereby certifies to the Oklahoma Supreme Court the following unsettled question of state law which may determine the outcome in the above-captioned action:
 
 
 2
 Whether a teacher's unexecuted threat to physically assault the school superintendent and another teacher, made on school premises but outside the general purview of the students, constitutes "moral turpitude" justifying his dismissal under OKLA. STAT. tit. 70, § 6-101.22.
 
 
 3
 Pursuant to OKLA. STAT. tit. 20, §§ 1602.1 and 1604(3), the Oklahoma Supreme Court may reformulate this question of law. A summary of the pertinent facts is set out below. See id., § 1604(2).
 
 
 4
 * Dempsey Keach Ballard was employed by the Colbert School District from 1984 until his termination on September 28, 1998. According to Mr. Ballard's complaint,[1] from 1984 until 1991, he was employed as both a teacher and a baseball coach. In June 1991, Mr. Ballard protested a reduction in the baseball budget to the school board. Shortly thereafter, he was notified that the school board had decided not to renew his coaching contract, and another baseball coach was hired. In June 1992, the school board eliminated Mr. Ballard's teaching position as part of a limited reduction in force. After Mr. Ballard brought suit in state court, the parties settled and he was reinstated as a teacher and baseball coach in 1994. In July 1997, defendant Jarvis Dobbs was hired as school superintendent. Mr. Ballard alleges that school board members influenced the new superintendent to form a negative opinion about him. In May 1998, on the superintendent's recommendation, Mr. Ballard's contract was terminated. On August 3, 1998, the state court again ordered him reinstated. See Aplt.App. at 2-5.
 
 
 5
 The following facts are taken from the federal district court's findings after it conducted a de novo hearing pursuant to OKLA. STAT. tit. 70, § 6-101.27.[2] Id. at 20-28. For the 1998-1999 school year, Mr. Ballard was assigned to teach physical education at the elementary school. On the morning of August 14, 1998, the school superintendent observed him in the copy room of the adjacent middle school. When the bell for first period rang, the superintendent instructed Mr. Ballard and another teacher to report to their assigned areas. After the other teacher left the copy room, Mr. Ballard informed the superintendent that he was already in his assigned area. When the superintendent threatened to write him up for not reporting to his assigned area, Mr. Ballard stated in a threatening tone "if you do, I'll beat the shit out of you." Id. at 22. When the superintendent asked if Mr. Ballard was threatening him, he replied "no, I'm telling you like it is — I'll do it right here." Id.
 
 
 6
 The superintendent left the copy room to get a witness to the exchange, and returned with the assistant principal. When the superintendent again asked whether Mr. Ballard was threatening him, he replied "what I said before still stands. I'll do it right here." Id. After Mr. Ballard refused to leave the copy room, the superintendent left, and Mr. Ballard told the assistant principal that he was going to hit the superintendent. Some of Mr. Ballard's threats were also heard by a teacher from the hallway outside the copy room.
 
 
 7
 Mr. Ballard then caught up with the superintendent and stated they needed to talk to straighten things out. The superintendent replied that they no longer had anything to talk about. At this point the two men were joined by the school principal. Mr. Ballard stated that he was tired of people talking about his wife, and that if it did not stop he would take matters into his own hands. In particular, he complained about comments made by the new baseball coach and stated in a threatening manner that "if [the coach] makes any further comment, [he] would pick something up and knock his head off." Id. at 24. Thereafter, Mr. Ballard informed the principal and superintendent that he was sick and was leaving for the rest of the day.
 
 
 8
 On August 17, 1998, the superintendent and principal notified Mr. Ballard that he was suspended for his comments. After a hearing, the school board voted to terminate Mr. Ballard for moral turpitude pursuant to OKLA. STAT. tit. 70, § 6-101.22.[3] Moral turpitude was the sole ground upon which Mr. Ballard was terminated. Mr. Ballard brought this civil rights action in the federal district court, and included a state law claim for a de novo hearing on his dismissal under id., § 6-101.27(A). After conducting a hearing and making the above findings of fact, the district court affirmed the Board's conclusion that Mr. Ballard's conduct constituted moral turpitude justifying termination. On Mr. Ballard's motion, the court then dismissed the remaining claims.
 
 
 9
 Mr. Ballard argues on appeal that even accepting the facts as found by the district court, as a matter of law his conduct did not constitute "moral turpitude." On our review of Mr. Ballard's claim, we are bound by the district court's factual findings in the absence of clear error, see Hawzipta v. Indep. Sch. Dist. No. I-004, 13 P.3d 98, 100-01 (Okla.Ct.App.2000), but our review of the meaning of the statutory term "moral turpitude" is a question of law which we review de novo, see Multiple Injury Trust Fund v. Pullum, 37 P.3d 899, 903-04 (Okla.2001). Because "moral turpitude" is not defined in the statute and no Oklahoma court has considered its application to facts similar to those presented in this case, we believe certification is appropriate. See OKLA. STAT. tit. 20, § 1602.
 
 II
 
 10
 Courts generally seem to group conduct involving moral turpitude into two categories: sexual misconduct and conduct involving deceit or fraud. Conduct outside these categories appears to be treated haphazardly throughout the country. See generally John Trebilcock, Off Campus: School Board Control over Teacher Conduct, 35 TULSA L.J. 445 (2000); Morrison v. State Bd. of Educ., 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375, 379-87 (Cal. 1969) (reviewing cases from California and other jurisdictions).
 
 
 11
 Oklahoma courts have defined moral turpitude as
 
 
 12
 any conduct contrary to justice, honesty, and good morals. [It] implies something immoral in itself regardless of whether it is punishable by law. The doing of the act itself, and not its prohibition by statute determines the moral turpitude. The elements of intent and knowledge are regarded as important, and if the wrong is unintentional or if the act is made improper by statute without regard to the mental element, it is not moral turpitude.
 
 
 13
 Kelley v. City of Tulsa, 569 P.2d 455, 457 (Okla.1977) (footnote omitted); see also Andrews v. Indep. Sch. Dist. No. 57, 12 P.3d 491, 495 (Okla.Ct.App.2000). The Oklahoma Supreme Court has indicated that moral turpitude is a high standard to meet. In Kelley, for example, the court held that "an isolated conviction of public drunkenness" was not a crime of moral turpitude because it was not "the kind of offense which signifies an inherent quality of baseness, vileness and depravity denoting moral turpitude." Kelley, 569 P.2d at 457. Here, although Mr. Ballard's behavior was unprofessional, it does not appear to be inherently vile and depraved.[4]
 
 
 14
 Oklahoma has very few cases considering the term "moral turpitude," and most of the teacher cases involve sexual misconduct or dishonesty. See, e.g., Hill v. Indep. Sch. Dist. No. 25, 57 P.3d 882 (Okla. Ct.App.2002) (teacher who made numerous false changes to student transcripts properly dismissed for moral turpitude); Andrews, 12 P.3d at 495 (teacher's extended romantic relationship with student deemed moral turpitude). In a very old case, the Oklahoma Criminal Court of Appeals held that a misdemeanor conviction for assault and battery did not involve moral turpitude. See Winfield v. State, 18 Okla.Crim. 257, 191 P. 609, 612 (Okla.Crim.App.1920). The Oklahoma Supreme Court has stated that friction between a teacher and a school administrator or other teacher, standing alone, would not justify a teacher's dismissal for incompetency or willful neglect of duty. See Childers v. Indep. Sch. Dist. No. 1, 645 P.2d 992, 997 (Okla. 1981).
 
 
 15
 These latter two cases arguably provide only limited help in determining whether Mr. Ballard's behavior, as a matter of law, constituted moral turpitude. In Childers, the court was not asked to examine whether the teacher's conduct rose to the level of moral turpitude. Rather, the court applied incompetency and willful neglect standards to determine whether the teacher's dismissal was lawful. Childers, 645 P.2d at 996-97. Winfield applied moral turpitude to the context of impeaching a witness' credibility on cross examination. The court determined the impeachable offense of assault and battery did not constitute moral turpitude. The specific act at issue in Winfield, however, was tarring and feathering, and such actions may not be viewed in the same light over eighty years later.
 
 
 16
 On the other hand, the Oklahoma courts have emphasized that "a teacher... in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the children coming under [his or her] care." Vaughn v. Bd. of Bar Exam'rs for the Okla. Bar Ass'n, 759 P.2d 1026, 1030 (Okla.1988) (quotation omitted) (sexual relations with students deemed moral turpitude); see also Andrews, 12 P.3d at 495 (extended romantic relationship with student warranted dismissal on grounds of moral turpitude). This indicates that a court should consider Mr. Ballard's position as a role model to his students in determining whether his threats of violence to the school superintendent and his subsequent threats regarding another teacher were acts involving moral turpitude. See Trebilcock, supra at 448-60 (noting trend of requiring that the term "moral turpitude" be construed as it relates to teacher's continued fitness to teach); Morrison, 82 Cal.Rptr. 175, 461 P.2d at 379-87 (same).
 
 
 17
 In this context, we note that Mr. Ballard's threats occurred on school grounds during the school day, and were loud enough to be heard outside the copy room. His behavior also may have damaged his ability to work cooperatively with his superiors and fellow teachers. On this basis, it is possible that Mr. Ballard's conduct was "moral turpitude" in the sense intended by the teacher dismissal statute.
 
 
 18
 Decisions from other jurisdictions are not helpful. One court has held that it is contrary to public morality to use violence, or the threat of violence, to resolve a dispute rather than seeking its resolution through proper channels. See Barringer v. Caldwell County Bd. of Educ., 123 N.C.App. 373, 473 S.E.2d 435, 440-41 (N.C.Ct.App.1996) (explaining that a teacher of ordinary intelligence would know that entering a pool hall with a loaded shotgun and sidearm, with statements indicative of a violent intent, is immoral conduct that would jeopardize his professional position). This seems especially true in light of the recent incidents of violence in schools across the nation. However, Mr. Ballard's verbal threat of violence in this case is far less egregious than the teacher's conduct of brandishing loaded weapons in Barringer.
 
 
 19
 Because there is no controlling precedent from the Oklahoma Supreme Court on this question of law which may be determinative of the appeal pending before us, certification is appropriate. See OKLA. STAT. tit. 20, § 1602. We therefore order the appeal stayed pending resolution of the question certified herein, and direct the Clerk of this Court to transmit a copy of the certification to the parties and to submit to the Oklahoma Supreme Court a certified copy of the certification together with copies of the briefs filed in this court.
 
 
 
 Notes:
 
 
 [1]
 The complaint alleged a series of interactions between Mr. Ballard and the school district preceding the event that formed the basis for Mr. Ballard's August 1998 termination. Although the district court held that these events were irrelevant to the moral turpitude question, we include the allegations to permit the fullest consideration of whether Mr. Ballard's conduct constituted moral turpitude as a matter of Oklahoma law
 
 
 [2]
 Section 6-101.27, which forms part of Oklahoma's Teachers Due Process Act, dictates in part: "A career teacher shall be entitled to a trial de novo in the district court of the county in which the school district is located." OKLA. STAT. tit. 70, § 6-101.27(A)
 
 
 [3]
 "Subject to the provisions of the Teacher Due Process Act of 1990, a career teacher may be dismissed or not reemployed for ... [a]ny reason involving moral turpitude." OKLA. STAT. tit. 70, § 6-101.22(A)
 
 
 [4]
 Kelley's application to the present case may be questionable because it is distinguishable on its facts. Kelley questioned whether an application for a private guard license was properly rejected on the grounds of moral turpitude, a setting distinctly different from that here, where the issue relates to on-the-job teacher conduct. Kelley, 569 P.2d at 457.